## JORDAN v. WIMER ET AL.

1. **Practice:** TRIAL: APPEAL. An equity cause is triable in the Supreme Court upon the errors assigned, notwithstanding no motion may have been made in the court below for a trial upon written evidence.

2. **Vendor's Lien:** WHEN IT EXISTS. The vendor of real estate has a lien upon the property sold for the unpaid purchase money, independent of the existence of a lien evidenced by a title bond or mortgage.

3. ———: RECORDING OF: CONSTITUTIONAL LAW. Section 1940 of the Code, which provides that no vendor's lien shall be enforced after a conveyance by the vendee, unless the lien is recorded, cannot apply to sales made before the enactment of the statute. SEEVERS, CH. J., *dissenting*.

4. ———: OBLIGATION OF A CONTRACT. The right to a lien upon the property sold, against the vendee and his grantees, constituted a right vested in the vendor, which formed an essential part of the contract of sale. SEEVERS, CH. J., *dissenting*.

5. ———: AMOUNT OF: SUBSEQUENT MORTGAGE. The lien of a vendor is not defeated by the fact that the amount of the lien was not known to the mortgagee.

*Appeal from Keokuk District Court.*

MONDAY, DECEMBER 11.

ON the 8th day of April, 1870, Gabriel F. Snyder sold and conveyed to E. M. Wimer certain real estate for the sum of $4,000, all of which was paid at the time of making the deed, except the sum of $1,150, which was to be paid in two years from that date. No note, mortgage nor any kind of writing whatever was executed for the unpaid purchase money.

On the 29th day of March, 1872, E. M. Wimer executed a promissory note to George Storm for the sum of $2,000, due June 1st, 1873, secured by a mortgage on an undivided one-half of the premises conveyed to him by Snyder. On the 16th day of March, 1873, Storm duly transferred the note and mortgage to W. A. Jordan. On the 6th of May, 1873, Wimer and wife, to better secure said note, executed to the holder, W. A. Jordan, a mortgage on the other undivided half of said premises. Storm had full knowledge that the purchase money had not been paid in full to Snyder, before he took his mort-

gage on the land. Jordan also, at the time of the assignment of the note and mortgage to him, and of taking the additional mortgage, knew that the purchase money had not all been paid. On the 22d day of July, 1875, the plaintiff, as the administrator of W. A. Jordan, deceased, commenced an action against E. M. Wimer for the amount of the note and a foreclosure of the mortgages. On the 4th day of August, 1875, Snyder intervened, claiming of Wimer a judgment for the unpaid purchase money, and asking that his vendor's lien be declared superior to the lien of said mortgages. The court rendered judgment in favor of the intervenor against Wimer for the sum of $1,150 and established a vendor's lien therefor on the premises sold, but declared the plaintiff's mortgages a lien paramount to that of the vendor. The intervenor appeals. No notice of appeal was served upon the defendant, Wimer.

*C. M. Brown* and *Stubbs & Leggett*, for appellant.

*Woodin & McJunkin*, for appellee.

DAY, J.—I. It is claimed that appellant is not in a position to be heard in this court, because no motion was made for a trial upon written evidence. The abstract contains all the evidence. There is no conflict or dispute respecting the facts. Errors have been assigned. Whilst, therefore, appellant may not be entitled to a trial *de novo*, he has a right to have the errors assigned considered. *Walker v. Plumer*, 44 Iowa, 406.

1. PRACTICE: trial: appeal.

II. Appellee claims that the doctrine has never yet been adopted in this State that the vendor shall have a lien, independently of the title bond or mortgage, for his purchase money, and it is insisted that such lien does not exist. This point was determined adversely to appellee in *Johnson v. McGrew*, 42 Iowa, 555.

2. VENDOR'S lien: when it exists.

III. The principal question in the case arises under section 1940 of the Code, which is as follows: "No vendor's lien for unpaid purchase money shall be recognized or enforced in any court of law or equity after a conveyance by the vendee, unless such lien is re-

3. ———: recording of: constitutional law.

served by conveyance, mortgage, or other instrument duly acknowledged and recorded, or unless such conveyance by the vendee is made after suit brought by the vendor, his executor or assigns, to enforce such lien. But nothing herein shall be construed to deprive a vendor of any remedy now existing against conveyances procured through the fraud or collusion of the vendees therein, or persons purchasing of such vendees with notice of such fraud."

Appellee contends that, under this section, the intervenor has no lien as against the mortgagee of the premises, no lien having been reserved in any written instrument. The intervenor insists that this section cannot, constitutionally, apply to his contract of sale, which was made before the section was enacted.

The Constitution of the United States, Art. 1, section 10, provides that no State shall pass any law impairing the obligation of contracts. The Constitution of this State, Art. 1, section 27, imposes a similar restriction upon legislative authority.

To this appellee responds that there was no contract that the intervenor was to have a lien, and that, for this reason these constitutional provisions are not applicable. Citing *Porter v. City of Dubuque*, 20 Iowa, 440. It must be remembered, however, that it is not *a contract* simply but *the obligation* of a contract which the constitution preserves from impairment. The obligation of a contract includes much that is not expressly stipulated for in the contract.

"The obligation of a contract consists in its binding force on the party who makes it. This depends upon the laws in existence when it is made; these are necessarily referred to in all contracts, and form a part of them as the measure of the obligation to perform them by the one party and the right acquired by the other. There can be no other standard by which to ascertain the extent of either, than that which the terms of the contract indicate, according to their settled legal meaning; when it becomes consummated the law defines the duty and the right, compels one party to perform the thing contracted for, and gives the other a right to enforce the per-

formance by the remedies then in force. If any subsequent law affected to diminish the duty, or to impair the right, it necessarily bears on the obligation of the contract, in favor of one party, to the injury of the other; hence, any law which, in its operations, amounts to a denial or obstruction of the rights accruing by a contract, though professing to act only on the remedy, is directly obnoxious to the prohibition of the constitution." Cooley's Constitutional Limitations, 2d ed., p. 285, and cases cited. In *Ogden v. Saunders*, 12 Wheat., 213, WASHINGTON, J., said:

"The obligation of a contract   *   *   *   is the law which binds the parties to perform their agreement. The law, then, which has this binding obligation, must govern and control the contract, in every shape in which it is intended to bear upon it, whether it affects its validity, construction or discharge. It is, then, the municipal law of the State, whether that be written or unwritten, which is emphatically the law of the contract made within the State, and must govern it throughout whenever its performance is sought to be enforced." In the same case, THOMPSON, J., said: "As I understand it, the law of the contract forms its obligation." In the same case TRIMBLE, J., said: "The obligation of the contract consists in the power and efficacy of the law which applies to, and enforces performance of, the contract, or the payment of an equivalent for non-performance. The obligation does not inhere and subsist in the contract itself, *proprio vigore*, but in the law applicable to the contract. This is the sense, I think, in which the constitution uses the term obligation." Cooley on Constitutional Limitations, p. 285, note.

. The action of this court has been in entire harmony with these principles. In *Rosier v. Hale*, 10 Iowa, 470, it was held that "An Act to provide for the appraisement of property sold under execution, approved March 31, 1860," cannot constitutionally apply to contracts entered into prior to the date of its taking effect. In *Maloney v. Fortune*, 14 Iowa, 417, it was held that section 3664 of the Revision, allowing a year's redemption after foreclosure sales, is inconsistent with the Constitution of the United States, and with that of the State

of Iowa, so far as it affects contracts made prior to its passage. See, also, *Harlan v. Sigler*, Morris, 39, and *Griffey v. Payne*, Id., 68.

Applying these principles to the case in hand, the solution of it is easy.

On the 8th day of April, 1870, the intervenor sold and conveyed the premises in question to Wimer, eleven hundred and fifty dollars of the purchase money remaining unpaid. In virtue of his contract of sale and conveyance, he acquired a right to a lien upon the premises, against Wimer and his grantees with notice, for the unpaid purchase money. This right, secured by the law then in force, forms a part, and a very essential part, of the obligation of the contract. Any legislation which destroys this right, impairs the obligation of the contract. It seems to us quite clear that section 1940 of the Code cannot constitutionally apply to contracts made before its passage.

IV. It is claimed, however, that the lien of the mortgagee must take precedence of that of the vendor, because the evidence does not show that the mortgagee knew how much of the purchase money was unpaid.

5. ——: amount of subsequent mortgage:

But we think that, having knowledge that purchase money was unpaid, it was his duty to inquire and ascertain how much was unpaid.

V. Appellant insists that his judgment is for too small an amount. But, as he has not made his debtor, Wimer, a party to the appeal, he can have no relief in this respect.

The court erred in postponing the lien of the vendor to that of the mortgagee.

REVERSED.

SEEVERS, CH. J., *dissenting.*—I feel compelled to withhold my assent to so much of the foregoing opinion as holds that the lien of the intervenor has priority over the mortgage. My reasons briefly are:

I. It is conceded in the opinion that § 1940 of the Code applies to transactions that took place prior to its passage;

and it is assumed that the lien of the vendor is acquired by virtue of the " contract of sale and conveyance."

It is said in *Porter v. Dubuque*, 20 Iowa, 440, that the lien of the vendor is "not based on contract," "nor is it an equitable mortgage or resulting trust. It is a simple equity raised and administered by courts of chancery."

The principle upon which courts of equity have gone in establishing this lien is that one person has gotten the estate of another which he ought not to keep without paying the full consideration. The lien cannot be " attributed to the tacit consent or implied agreement of the parties, but stands independently of any such agreement." 2 Story's Equity Jurisprudence, § § 1219, 1220.

The lien is a mere equity or capacity of acquiring a lien, and to have it satisfied. But it is not an equitable estate in the land itself. Nor can its existence be safely predicated in any case until established by a decree of the court. *Gilman v. Brown*, 1 Mason, 162. The lien of a judgment or attaching creditor has priority over that of the vendor. *Allen v. Loring*, 34 Iowa, 499.

What was the contract between the intervenor and vendee? Simply that in consideration of the sale and conveyance of the land the vendee agreed to pay the purchase price. The intervenor thereupon became entitled to a lien, in case the purchase money was not paid, against the vendee and subsequent purchasers, or incumbrancers with notice. But this was not an obligation of the contract. At most it was an incident attaching thereto, which might or might not be enforced, not because based on contract, but because the vendee has possession of property which he has not paid for.

If the lien constitutes an obligation of the contract, it attaches at the instant the contract is made. This, however, cannot be, for the contract precedes the conveyance. It cannot and does not attach at the conveyance, but at the time a court of equity gives it vitality and by its decree causes it to relate back to the purchase, provided there are no intervening equities. It is difficult, therefore, to see how it forms an obliga-

tion of the contract. If it does not, it will be conceded, I presume, that § 1940 of the Code is not unconstitutional.

II. Previous to the enactment of the Code the reservation of the lien by any writing was not required; but the facts essential to its enforcement might be shown partly, at least, by parol.

Section 1940, however, declares that the lien shall not be *recognized* or *enforced* unless it is reserved by some writing, acknowledged and recorded. This, in my opinion, is a mere rule of evidence, degree or kind of proof requisite to establish the existence of the lien, and therefore relates to the remedy only. Cooley on Constitutional Limitations, 288.

Suppose the General Assembly should repeal the statute of frauds, and enact in its place that no writing should, in any case then pending or thereafter brought, be required to establish any of the matters now required to be proved by writing. Will it be said such a law would be unconstitutional? Or suppose, by the law ·now in existence, a parol promise is sufficient to revive a debt barred by a discharge in bankruptcy or the statute of limitations, and the General Assembly should pass a law making all such promises void unless in writing. That such a law would be constitutional, and parol promises made before its passage held void, was expressly decided in *Kingley v. Cousins*, 47 Me., 91.

The legislature may prescribe what shall and what shall not be evidence of any asserted fact, whether it shall be in writing or oral; and it can make no difference whether it be in reference to contracts existing at the time or prospectively. There is not and cannot be a vested right in a particular remedy, or that what is to-day legal evidence of a fact will always remain so. *Oriental Bank v. Frye*, 10 Me., 109; *Fales v. Wadsworth*, 23 Me., 553; *Springfield v. County Commissioners*, 6 Pick., 501.

III. It is a difficult question to determine what relates to the obligation of a contract and what to the remedy. No general rule can be laid down. Nor can this question be satisfactorily solved by a consideration of the language used by

the learned judges who have delivered opinions in causes in which this subject was under consideration.

The point decided in *Ogden v. Saunders*, 12 Wheaton, 213; *Bronson v. Kinzie*, 1 How., 311; and *McCracken v. Hayward*, 2 How., 608, should, I apprehend, be conclusive in any subsequent case based on similar facts. It can be well said, however, that in none of those cases are the facts like the case at bar. There is a class of cases which, to my mind, more nearly resemble this — those which recognize that imprisonment for debt does not form an obligation of the contract. It is held that a discharge of the person of the party from imprisonment does not impair the obligation of the contract, but leaves it in full force against his property and effects. *Beers v. Haughton*, 9 Peters, 329. So here, the discharge of the lien does not impair the obligation of the contract, but leaves it in full force against the property and effects of the vendee. This might be different if the lien constituted an obligation of the contract.

In *Morse v. Goold*, 1 Kernan, 281, it was held that a law exempting certain property from levy and sale applies to judgments rendered on contracts entered into before as well as after its passage. See also *Walter v. Bacon*, 8 Mass., 468; *Bigelow v. Pritchard*, 21 Pick., 169.

It was expressly stipulated in a lease that the lessor might distrain for rent. Afterward a law was passed abolishing distress for rent. It was held such law was constitutional, and did not impair the obligation of contracts. *Conkey v. Hart*, 4 Kernan, 22; *Van Rensselaer v. Snyder*, 3 Id., 299.

*Rosier v. Hale*, 10 Iowa, 470, is not, in my judgment, applicable. And I think *Holland v. Dickerson*, 41 Iowa, 367, is in conflict therewith. The latter holds that the obligation of a contract is not impaired where the remedy is by the legislature so changed as to make it more efficient than previously; that to impair makes worse; to so change the remedy or obligation of the contract as to make it more efficient is to impair or change it against the interest and desire of the other party. There must be at least two parties to every contract—their obligations are different. To make it better for

one party necessarily must impair it as to the other. It is difficult to see why the right of redemption within a specified time is not as much an obligation of the contract to one party as the other. And why the time within which it is to be made can be taken away or lessened, and it may not be lengthened or made to apply to contracts entered into previous to its passage.

The vendee has not appealed from the judgment establishing a lien, but postponing it to the mortgage. I therefore am of opinion the judgment below should be affirmed.